IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

TERRY F. CANTRELL,

      Plaintiff,


V.                                          CIVIL ACTION NO. 3:06-0609


MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.


**MEMORANDUM ORDER**

In this action, filed under the provision of 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed his applications on November 29, 2001, alleging disability commencing May 5, 2001,[1] as a result of arthritis in his neck and back and a history of two surgeries on his neck. On appeal from initial and reconsidered denials, an administrative law judge, after hearing, found plaintiff not disabled. Plaintiff requested review by the Appeals Council which remanded the case for further development. Following the receipt of additional evidence and another hearing, an administrative law judge again found plaintiff not disabled in a decision which became the final

---

[1]Plaintiff's insured status expired December 31, 2006 and, for purposes of his application for disability insurance benefits, it was encumbant upon him to establish disability on or before that date. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971).

decision of the Commissioner when the Appeals Council denied plaintiff's request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision. Upon motion of the Commissioner, this Court remanded the case for another hearing. On remand, this case was consolidated for decision with applications filed by plaintiff on April 4, 2006. Following another finding that plaintiff was not disabled by an administrative law judge and a denial of his request for review by the Appeals Council, this case was reinstated to the Court's active docket upon motion of the Commissioner.

At the time of the most recent administrative decision, plaintiff was forty-nine years of age and had obtained a GED. His past relevant employment experience consisted of work as a mechanic. In his decision, the administrative law judge determined that plaintiff suffers from neck, back and shoulder pain, loss of vision in the right eye and depression, impairments he found severe. Though concluding that plaintiff was unable to perform his past work,[2] the administrative law judge determined he had the residual functional capacity for a limited range of light level work. On the basis of this finding, and relying on Rule 202.18 of the Medical-Vocational Guidelines[3] and the testimony of a vocational expert, he found plaintiff not disabled.

The medical evidence reveals that plaintiff has had difficulty with neck pain and has undergone two surgeries. The first was in 1999 and gave plaintiff enough relief that he was able to return to work until May 5, 2001, his alleged onset date. The following month, Dr. Dozier, his treating neurosurgeon, performed the second surgery for decompression of the cervical spine due to

---

[2]This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[3]20 C.F.R. Part 404, subpart P, Appendix 2, Table No. 2.

spinal stenosis and cord compression. Plaintiff reported the symptoms of numbness he had been experiencing in his arms were initially markedly improved but returned. While subsequent x-rays and MRI's have shown some foraminal stenosis in the cervical spine, they have not been interpreted as demonstrating spinal cord stenosis.

During consultative examinations on February 18, 2002 (Dr. Kancherla) and May 11, 2006 (Dr. Holley), continued range of motion restriction was observed in the cervical spine and the shoulders. The latter examiner diagnosed shoulder impingement syndrome. A state agency medical advisor who reviewed the record assessed plaintiff as capable of light level work on March 22, 2002.[4] This evaluator found plaintiff's ability to push and pull and to reach in all directions with the upper extremities limited due to shoulder and cervical spine problems; determined plaintiff should never climb ladders, ropes or scaffolds and could only occasionally balance, stoop, kneel, crouch or crawl; and should avoid concentrated exposure to extreme cold, heat, wetness and vibration as well as moderate exposure to hazards. During a November 3, 2003 Functional Capacity Evaluation, performed on recommendation of Dr. Dozier, it was noted that plaintiff could lift no weight above shoulder level.

Dr. Robert Marshall, a specialist in cardiology who testified at the hearing as a medical expert, did not provide any sort of written assessment of plaintiff's residual functional capacity. While he listed a few limitations in his testimony, they are for the most part rather vague. He expressed the opinion that plaintiff could do light work, and because of his vision and other problems, should "stay off ladders." He indicated plaintiff could stand and walk in combination four

---

[4]A second state agency medical advisor indicated his/her agreement with this assessment at a later date which is illegible.

hours out of eight, but had an unlimited ability to sit. His answer to the administrative law judge's question about whether plaintiff needed a sit/stand option was "it's possible," although he went on to state that the evidence did not really explain why plaintiff was limited in standing and walking. He stated he did not disbelieve plaintiff, but a cause for the numbness and pain he experienced in his arms and legs was not found.

Dr. Marshall also related that because of the mild to moderate restriction of plaintiff's neck movement, he would have difficulty driving, and this would be compounded by his loss of vision in the right eye. He said plaintiff could not do close work or work requiring binocular vision. Finally, Dr. Marshall expressed the opinion that "objectively," there had not been "any major change" in plaintiff's condition since his alleged onset date and, therefore, the things he pointed out would have been limitations for plaintiff since that time.

In his decision, the administrative law judge indicated he gave Dr. Marshall's opinion "great weight" and the March 2002 residual functional capacity assessment "significant weight" because they were "well-supported by the evidence of record." He did not state what his own residual functional capacity findings were, however, and the assumptions in his hypothetical question do not include, or are not consistent with, the limitations from these two sources.

The administrative law judge asked the vocational expert to consider a limitation to light level work, which these sources both found. He did not, however, mention any limitation as to standing or walking, which Dr. Marshall found, or any limitation on pushing and pulling with the upper extremities as found by the state agency reviewer to result from neck and shoulder pain and limited range of motion. While the administrative law judge included an assumption that plaintiff could only occasionally crawl, he did not include further limitations as to the rest of the postural

4

activities (climbing ramps and stairs, balancing, stooping, kneeling and crouching), which the state

agency medical advisor concluded could be done only occasionally. The administrative law judge

did find plaintiff could occasionally climb ladders, ropes or scaffolds, but both the state agency

medical advisor and the medical expert concluded plaintiff should never perform this activity.

Similarly, the administrative law judge neglected to include any assumption as to reaching, even

though the state agency medical advisor concluded that this activity could only be done occasionally,

and this is supported by the consistent findings of limited shoulder range of motion throughout the

evidence. Dr. Marshall said little or nothing about environmental limitations, but the state agency

medical advisor concluded there was a need to avoid concentrated exposure to several conditions,

particularly temperature extremes and wetness, and it is observed that a repeated complaint plaintiff

made was that his pain was worse with changes in the weather. The administrative law judge

mentioned none of these to the vocational expert, asking her to assume only a need to avoid

concentrated exposure to vibration and hazards.[5]

    As noted, Dr. Marshall observed that plaintiff had mild to moderate limitation in neck range

of motion which would cause some difficulty, particularly with driving, and especially in

combination with his visual impairment. The administrative law judge addressed this in the

hypothetical question by saying plaintiff would have a "possibility of problems with constant rotation

of the neck." This is a vague assumption and gives no help to the vocational expert. As noted, the

clinical findings have consistently shown restricted range of motion of the neck, not just in rotation

but flexion (looking down) and extension (looking up), and it is not clear whether or if occasional

_____

[5]The state agency residual functional capacity assessment reflects a greater degree of restriction in this area.

movements in these directions would pose any problems. It is clear, however, that the administrative law judge's characterization is not supported by the evidence.

While the Court recognizes that resolution of conflicts in the evidence is a function of the Commissioner, not the Courts, Thomas v. Celebreeze, 331 F.2d 541 (4th Cir. 1964), nevertheless, before this Court can conduct a reasoned review of his decision, the Commissioner must "explicitly indicate 'the weight given to all relevant evidence,'" articulating "the reasons underlying his actions ... ." Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987). Here, the administrative law judge has not even stated his conclusions as to plaintiff's residual functional capacity, much less articulated the reasons he chose certain restrictions and not others. Obviously, this prevents the Court from undertaking meaningful review, and remand will be necessary for a re-evaluation of plaintiff's residual functional capacity accompanied by an explanation of the basis for the findings and why certain limitations were chosen and not others.

Additionally, vocational testimony will obviously need to be taken again on remand. As the Court has stated, "[i]n order for a vocational expert's opinion to be relevant or helpful, ... it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). In light of the significant deficiencies noted, it is apparent that the hypothetical question does not meet this standard, and additional questioning will be necessary on remand. The parties should also be permitted to submit additional, relevant evidence.

On the basis of the foregoing, it is **ORDERED** that this case be remanded to the

Commissioner for further proceedings consistent with this Memorandum Order.

The Clerk is directed to transmit a copy of this Order to all counsel of record.

ENTER:  October 27, 2009

MAURICE  G.  TAYLOR,  JR.
UNITED  STATES  MAGISTRATE  JUDGE